# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| PAMELLA A. GARRETT, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. CIV-08-277-SPS |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Pamella A. Garrett requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 19, 1964, and was forty-three years old at the time of the administrative hearing. She has a GED and previously worked as an assembler, cleaner (housekeeping), and manager (retail). The claimant alleges she has been unable to work since June 8, 2001, because of degenerative disc disease and obesity.

## Procedural History

On October 28, 2005, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, which application was denied. ALJ Michael Kirkpatrick conducted a hearing and determined the claimant was not disabled on October 22, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of sedentary work, *i. e.*, that she could lift and/or carry ten pounds; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 17). The ALJ concluded that the claimant was not disabled because she met Rule 201.28 of the Medical-Vocational Guidelines (the "grids") (Tr. 24).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of her treating physician Dr. Craig Carson, M.D.; (ii) by applying the grids to her case; and, (iii) by finding she had the RFC to perform significant gainful activity. The Court finds the claimant's first contention persuasive.

Treatment records reveal that the claimant's back pain originated from a work-place injury she suffered in September 2000 when she fell from a ladder and her right leg was caught and she fell on her left leg (Tr. 241). The claimant was first examined by Dr. Carson, a board certified rheumatologist, in June 2004. She complained of back, leg, hip, groin and foot pain (Tr. 181), and she also reported sinus headaches, memory problems, muscle spasms, sensitivity in her hands and feet, and difficulty sleeping. The claimant had more recently developed shoulder pain and pain in her right ankle. Dr. Carson performed an examination on the claimant noting a limp, slightly limited range of motion in the right hip with pain, swelling and tenderness of the right ankle and foot, slightly limited range of motion in the shoulder, and 14/18 tender points. Dr. Carson concluded that she suffered from fibromyalgia and possible inflammatory arthritis (Tr. 175, 179-80). The claimant's radiology report revealed normal bilateral shoulders, degenerative disc disease of the thoracic spine, normal lumbar spine with questionable SI sclerosis, and first MTP osteoarthritis of the bilateral feet and ankles (Tr. 169). When the claimant returned to Dr. Carson in September 2004, she reported that pain continued through her buttocks and down into her foot. The claimant exhibited positive straight leg raising on the right. He noted she suffered from

fibromyalgia, mild degenerative disc disease and mild MTP osteoarthritis (Tr. 158). In January 2005, the claimant continued to complain of pain in her lower back and right groin, leg and foot. She indicated that walking or standing and sitting for long periods made her pain worse (Tr. 157). At her April 2005 appointment, the claimant stated her condition remained the same, and Dr. Carson indicated she suffered from severe lumbar pain radiating across her buttocks and insomnia (Tr. 156). She continued to suffer from pain at her July and October 2005 appointments (Tr. 154-55). Dr. Carson wrote a letter on the claimant's behalf in December 2005, wherein he indicated she had spondyloarthritis with uncontrolled pain equal to a seven on a scale of one to ten. He noted she had swollen and tender joints of the MCPs, PIPs, and sacroiliac joints and that her medications had not been very effective. He determined her condition would definitely cause her "difficulty with the work related activities such as sitting, standing, walking, lifting, carrying or handling objects." (Tr. 150).

By January 2006, the claimant continued to suffer the same ailments and was also assessed with depression (Tr. 365). She was suffering from swelling in her upper back and pain and stiffness in her neck in April 2006. (Tr. 363). In August 2006, Dr. Carson described the claimant's active problems as ankylosing spondylitis, depression and taking high-risk medication (Tr. 360). By November 2006, in addition to the pain in her lower back, right groin, leg and foot, the claimant was concerned about swelling in both her hands and feet, tingling in the fingers with numbness, stiffness in the lower back, and pain in the neck and between the shoulders. (Tr. 354-56). She continued to suffer from the same problems and was assessed with ankylosing spondylitis, constipation, depression, lumbar radiculopathy,

and taking high-risk medication in March 2007 (Tr. 348-50). In May 2007, Dr. Carson noted swelling and tenderness in the claimant's wrists, MCPs, PIPs, ankles, and MTPs, and she also suffered from stiffness and decreased rotation in the shoulders (Tr. 381-82). At that time he completed a physical medical source statement wherein he found the claimant was unable to lift any amount of weight but could carry up to three pounds if an object was handed to her. She could stand and/or walk for one hour and continuously for ten to fifteen minutes, but she was unable to stand in place without pain. She could walk to and from her mailbox. The claimant could sit for a total of four hours in an eight-hour workday but only thirty minutes continuously (with pain). She needed to alternate between sitting and lying down, which included a large part of her day. She was unable to push and/or pull hand or foot controls. Her postural limitations included occasionally climbing, reaching and fingering but never balancing, stooping, kneeling, crouching, crawling, and handling. The claimant's environmental restrictions included temperature extremes, vibrations, and allergies to grass. Dr. Carson indicated that the claimant was "unable to do most . . . physical activities." As support for his conclusions, he noted the claimant's elevated CK level, mild degenerative disc disease of the thoracic spine, inflammatory systemic disease (triggered by a fall), extreme stiffness and pain of the spine and large joints, and developing stiffness of the hands. Dr. Carson's conclusions included consideration of the claimant's pain, but he noted that she had been eager to try new medication and was desperate for relief (Tr. 366-67). The claimant continued to see Dr. Carson through November 2007. Her problems remained the same, except for the notation of a limited range of motion in her spinal mobility

(Tr. 383-85, 390-392, 393-395). At her appointment in November 2007, Dr. Carson's examination revealed "very definite grade 2 synovitis in the wrists, MCPs, PIPs, right knee, ankles, and MTPs" with limited range of motion in her cervical spine. He diagnosed her with rheumatoid arthritis at that time (Tr. 395).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255

F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ mentioned Dr. Carson's findings that the claimant would have difficulty working, *e. g.*, his December 2005 opinion that "the claimant had uncontrolled pain which would cause difficulty with work related activities" and his May 2007 opinion that the claimant "could perform less than sedentary activities due to mild degenerative disc disease of the thoracic spine and inflammatory systemic disease due to a previous fall," and discussed the requirements for assigning controlling weight to a medical opinion. He noted that the determination of disability was one reserved for the Commissioner. The ALJ determined that Dr. Carson's opinions were not entitled to "much weight" because: (i) "Dr. Carson . . . simply accepted the claimant's subjective allegations and complaints as true, without question, and parroted them back as his opinion[;]" (ii) and, "[t]he actual objective medical signs and findings d[id] not establish the presence of an impairment or a combination of impairments which could reasonably be expected to cause the alleged severity of the claimant's symptoms and functional limitations." (Tr. 20). However, the ALJ's evaluation of Dr. Carson's opinions was deficient for several reasons.

First, although Dr. Carson's conclusion that the claimant was unable to work *was* an issue reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), (2) (noting that opinions

that claimant is disabled or that an impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."), Dr. Carson also rendered opinions about the claimant's functional limitations in the medical source statement, which the ALJ was required to analyze under the standards set forth above. *See*, *e. g.*, 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions."). While the ALJ cited to the medical source statement in his decision, he did not discuss any of the specific functional limitations imposed on the claimant by Dr. Carson or why he rejected them, *e. g.*, postural limitations, environmental restrictions (Tr. 20).

Second, there is no indication that Dr. Carson's opinions expressed in his treatment records or on the questionnaire were based solely on the claimant's subjective complaints. *Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy.") [citation omitted]. *See also McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th

Cir. 2002) (finding "that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician."), *citing Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). On the contrary, although his opinions included consideration of pain, discomfort, and other subjective complaints, Dr. Carson specifically noted that his opinions were based on the claimant's elevated CK levels, mild degenerative disc disease of the thoracic spine, inflammatory systemic disease, extreme stiffness of the spine and large joints, and stiffness of the hands (Tr. 367).

Finally, the ALJ failed to conduct a proper evaluation of Dr. Carson's opinions under the second stage of the treating physician analysis, *i. e.*, the ALJ considered only two of the factors set forth in 20 C.F.R. § 404.1527, *e. g.*, he cited a 2002 functional capacity evaluation from BACK OK! as inconsistent with Dr. Carson's 2007 opinions and he noted that Dr. Carson provided the claimant with treatment in the form of oral medications and injections.[2] Although he briefly mentioned the other factors, it does not appear the ALJ applied them, as he was required to do. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all* of the factors provided in [§] 404.1527.'") [emphasis added], *quoting Watkins*, 350 F.3d at 1300. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation

---

[2] The claimant participated in a functional restoration program/spinal emphasis at BACK ON! in September 2002. She tested in the sedentary/light category (Tr. 272-78).

omitted], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites not law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Most troubling, however, is the ALJ's failure to even mention that Dr. Carson was the claimant's board certified treating rheumatologist.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of Dr. Carson's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 3rd day of September, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**